ELIZABETH SIBLEY, DORA DAVIS, DOROTHY SIMMONS AND CALLIE RANDALL, PLAINTIFFS-RESPONDENTS, v. CITY SERVICE TRANSIT COMPANY, DEFENDANT-APPELLANT.

Argued May 16, 1949—Decided June 30, 1949.

460

*Mr. Verling C. Enteman (Messrs. McCarter, English & Studer,* attorneys) argued the cause for the defendant-appellant.

*Mr. John A. Laird (Mr. Samuel H. Berlin,* attorney) argued the cause for the plaintiffs-respondents.

The opinion of the court was delivered by

HEHER, J. The appeal is from a judgment of the Appellate Division of the Superior Court which affirmed a judgment for the plaintiffs in an action in tort for negligence in the operation of a motor bus in these circumstances:

Plaintiffs were employees of the United States Government at the Picatinny Arsenal near Dover, New Jersey, working on the "swing" shift from 4 P. M. to midnight. They were all residents of Newark and were daily commuters on buses operated by defendant, a common carrier. On February 27, 1943, they took passage for home on a bus provided by defendant which left Dover at 12:40 A. M. with 34 passengers in all, workers at the Arsenal. A mile or two from Dover, in a sparsely settled area, a rear wheel rolled off the vehicle. No one was injured in the mishap. The distance to Newark was between 20 and 25 miles. It was "very, very cold" and "blustery;" there had been snow and sleet, and the roadway was "very glassy." One of the plaintiff passengers said she was "shivering" and "freezing." The operator, Barner, testified that he made an effort to communicate by telephone with defendant's garage, but there was no response. He then telephoned to one Zingler at his home in Nutley and, after conversing with him, returned to the disabled bus. He described Zingler as "more or less a boss or foreman—our dispatcher." Barner said he remained in the bus, or nearby, doing what he could to provide heat for the passengers by keeping the motor in operation, until a bus from the Arsenal came to the scene and took the stranded passengers and Barner on board. The transfer of the passengers was under Barner's supervision; and he directed the operator as to the route to be taken to Newark. On the way, the operator lost control of the vehicle; it left the highway, and the plaintiffs suffered injuries for which the recovery now under review was had.

Zingler testified thus as to Barner's telephone call to him: "I told the driver to go back to his bus and wait; that I would dispatch a bus either out of the garage or turn one back that was supposed to be at the diner—they stop at the diner on the way home for coffee on the night shift—that I would

turn one of those buses around." He said he "dispatched a bus out of the garage." But Barner said there was no response when he sought telephonic communication with the garage shortly before. Only the Arsenal bus arrived at the scene; and this was two hours or so after the mishap occurred.

Barner did not relate his conversation with Zingler. He was vague as to what he did when he returned to the disabled vehicle, pleading loss of recollection; but there is in the evidence a sufficient basis for the finding that he, himself, summoned the Arsenal bus and arranged for the conveyance of his passengers to Newark. He insisted he could not "remember" whether he "called the Arsenal that night or not;" but he admitted that he stated in writing shortly after the occurrence that he had telephoned to the Arsenal for a bus, was told to stand by, and received word ten minutes later that a bus was en route, and that it arrived "in a few minutes;" and he said that the statement was correct "as far as" he could "remember." He also testified that his bus had been "stranded a couple of hours" before the relief bus came from the Arsenal. And one of the plaintiffs, Simmons, testified that Barner hailed a passing automobilist and asked for and was given transportation to the Arsenal, and that he returned in the Arsenal bus and directed the transfer of the passengers. The operator of the Arsenal bus, one Herman, was not called to the witness stand; and there is no evidence that a relief bus of defendant actually went to the scene. There is evidence that the request to the Arsenal for assistance was received "an hour or more" after Zingler had been notified of the need for a bus. This came from the officer in charge of the Arsenal, who said aid was refused when the call first came because the responsibility was the carrier's when a vehicle became disabled. But it was, he said, "a very bitter cold night and very slippery; the people were freezing out there, and no bus had come, and it just was not human to leave them out there, and besides if we did not get them home we surely would not get them back to work the next day;" and so a bus was dispatched from the Arsenal.

The authority of an agent to appoint another agent

for his principal may be express or implied. The authority may be inferred from the nature or extent of the work to be done, from the general course of conducting the business, or from the particular circumstances of the case. *Hollidge v. Duncan,* 199 *Mass.* 121, 85 *N. E.* 186 (1908); *Beaucage v. Mercer,* 206 *Mass.* 492, 92 *N. E.* 774, 1910); *Gleason v. Amsdell,* 9 *Daly* 393 (1880). Implication is but another term for meaning and intention; express authority given to an agent includes by implication, whether the agency be general or special, unless restricted to the contrary, all such powers as are proper and necessary as a means of effectuating the purposes for which the agency was created. *Dispatch Printing Co. v. National Bank of Commerce,* 109 *Minn.* 440, 124 *N. W.* 236 (1910). Such authority is implicable where an unforeseen contingency or emergency arises making such appointment reasonably necessary for the protection of the interests of the principal entrusted to the agent, *Restatement, Agency,* § 79. The rule is qualified in the, *Restatement* as applicable only where it is "impracticable to communicate with the principal."

A mechanical breakdown of a bus is hardly an unforeseen contingency. But the breakdown under the particular conditions here presented gave rise to an emergency affecting the health and safety of the passengers, as well as their comfort and convenience; and it was peculiarly the function of the jury to assess the facts and determine whether defendant's operator had exceeded his authority. Zingler's testimony in this regard was not conclusive of the issue. Its probative value was a question of fact. *Schmidt v. Marconi Wireless Telegraph Co.,* 86 *N. J. L.* 183 (1914). Moreover, the proofs leave one in serious doubt as to Zingler's connection with defendant and the extent of his authority; if he was a mere "dispatcher," he could not revoke the implied authority and the consequent duty of the operator to exercise a reasonable discretion in meeting the emergency—to serve the needs of the passengers and thus to protect the interests of his employer. And what he said to the operator, as he related it, had no such effect; he simply undertook to send a

bus if he could find one, not to curtail the agent's authority in the exigency. At the most, the significance of what he said was a question for the jury under all the circumstances. When the Arsenal was called for aid, it was reasonably certain that Zingler's efforts to find a bus had been unavailing. The emergency continued; and the responsibility for the care of the stranded passenger's was the operator's.

It is urged that there was error in this passage of the charge:

"Now, in connection with the question as to whether or not the defendant in this case is charged with negligence, you may consider whether the bus in question was shown to be under the exclusive control of the defendant or its agent at the time of the accident, whether the accident which occurred was such as in the ordinary course of things does not happen or might have been prevented if the operator of the bus used proper care. And if you are satisfied from the proof that such are the facts, then you would have the right to infer negligence, unless the defendant has proved that due care was exercised."

The exception is not well taken. The criticism is that the judge thereby invoked the doctrine of *res ipsa loquitur*. A common carrier of passengers is charged with the duty of using a high degree of care for their safety. *Spalt v. Eaton,* 118 *N. J. L.* 327 (*Sup. Ct.* 1937); affirmed, 119 *N. J. L.* 343 (*E. & A.* 1938). Negligence was reasonably inferable from the circumstances. The bus went off the highway and dashed into a wall; and from this circumstance alone, nothing else appearing, the want of the requisite degree of care is fairly deducible. There was evidence that just before the bus left the highway, the operator, Herman, exclaimed: "Here, we go." This suggests forewarning. It was for the jury to say whether it signified the operation of the bus in the face of a known and obvious danger, and whether the operator exercised a high degree of care for the passengers' safety. As we have seen, Herman was not called as a witness. The jury were not told that in such circumstances the law shifts the burden of proof to the defendant, as in *Hughes v. Atlantic City R. R. Co.,* 85 *N. J. L.* 212 (*E. & A.* 1914). The

instruction was merely that the jury had "the right to infer negligence," unless the defendant had proved the exercise of due care, not that they were required to do so. The principle was expressed in this very language by the old Court of Errors and Appeals in *Whalen v. Consolidated Traction Co.*, 61 *N. J. L.* 606 (*E. & A.* 1898). The expression is unexceptionable. The inference is permissible, not required. The occurrence itself is evidence of negligence; whether it amounts to proof is the exclusive province of the jury.

The judgment is affirmed.

BURLING, J. (Dissenting.) I am unable to agree with the majority of the court. Some of the testimony was in conflict but there was sufficient free from dispute to establish the salient and determining facts. In my judgment such evidence conclusively discloses a situation out of which no liability on the part of appellant can be spelled.

This case was concededly tried upon the premise that the liability of appellant arose out of its status as a common carrier of passengers. Such a carrier is under the duty of using a high degree of care for the safety of its passengers. This duty is assumed by the carrier at the inception of the carrier-passenger relationship and cannot be delegated by it to any other person or carrier. It continues to the end of the journey unless sooner terminated by the voluntary act of the passenger. *Kelson v. Public Service Railroad Co.*, 94 *N. J. L.* 527 (*E. & A.* 1920); *Little v. Dusenberry*, 46 *N. J. L.* 614, 643 (*E. & A.* 1884). However, while a carrier remains liable during the whole of the passage, even though a part thereof is on the vehicle of another carrier, such liability is predicated upon the theory that the connecting carrier is the agent of the first carrier. 3 *Shearman & Redfield, Negligence* (1941), § 510, *p.* 1297. In order for respondent to recover, an essential element is evidence sufficient to warrant presentation to a jury from which may be established the existence of an agency relationship between appellant and the driver of the army bus who it is alleged was negligent in the operation thereof. This, in turn, depends upon the power of

Barner, the agent of the appellant on the scene, to engage the army bus and its driver. Respondents attribute no negligence to Barner. Compare *Conway v. Pickering,* 111 *N. J. L.* 15 (*E. & A.* 1933).

Agency has been defined as "the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Restatement, Agency,* § 1. Refer also to 2 *Am. Jur., "Agency,"* § 2, *p.* 13. The test is whether there was from the employer an express or implied authority for doing that which was done out of which the harm came. *Blackman v. Atlantic City, etc., R. R. Co.,* 126 *N. J. L.* 548, 549 (*E. & A.* 1941). Where a servant, even in the execution of his general duty. uses an instrumentality not expressly or impliedly authorized by the master, and harm results, the master is not liable. *Blackman v. Atlantic City, etc., R. R. Co., supra,* at *p.* 461. It is necessary that there be not only the status of agency but also activity by the servant or agent within the assigned task and within the scope of the agency. *Muckin v. Hubbs,* 128 *N. J. L.* 395, 397 (*E. & A.* 1942).

The case of *Dispatch Printing Co. v. National Bank of Commerce,* 109 *Minn.* 440, 124 *N. W.* 236 (*Sup. Ct. of Minn.* 1910), relied upon by the majority opinion, makes this necessity quite clear. As pointed out in that opinion (at *p.* 239 of 124 *N. W.*) authority of an agent may be express, namely that which the principal directly grants, which may include by implication all such powers as are necessary and proper for effectuating the purposes for which the agency was granted; or such authority may be apparent, which arises from the conscious permission by the principal of acts beyond those expressly granted. In both classes it will be noted that the manifestation of consent by the principal is necessary, whether by necessary implication from the overt acts of the principal or by direct expression of consent.

Measured by this test it becomes clear that appellant at no time consented to the engagement of the army bus. Barner testified without contradiction that he had been instructed

to call his garage whenever he had a breakdown; that at the time in question after the wheel had fallen off his bus he got out and walked down the road to a hotel and telephoned his garage in Newark. He then stated that, while unsuccessful in his attempts to contact the garage by telephone, he reached one Zingler at his home by telephone. He characterized Zingler as "our dispatcher;" "more or less a boss or foreman." It does not appear in the evidence to the contrary.

Zingler testified, also without contradiction, that "I told the driver to go back to his bus and wait; that I would dispatch a bus either out of the garage or turn one back that was supposed to be at the diner—they stop at the diner on the way home for coffee on the night shift—that I would turn one of those buses around." He further testified "I dispatched a bus out of the garage." To "dispatch" means to send off or away with promptness and speed, Webster's New International Dictionary, 2d Ed. 1947. In this posture of the evidence Barner's lack of authority was clear. The conflict of evidence was as to whether or not he actually engaged the army bus, but such conflict, even if resolved in the affirmative, would not operate to create liability in the face of specific instructions to "go back to his bus and wait." For the same reason it is clear that no basis exists for holding that the engagement of the army bus might be implied to be necessary and proper as a means of effectuating the purposes for which Barner's agency as a bus driver was created. "Authority exists only when, from the manifestations of the principal and the happening of events of which the agent has notice, the agent reasonably believes that the principal desires him to act." *Restatement, Agency,* § 38. Such manifestations in the instant case were to the contrary and it is clear that Barner had no authority to act.

Further, the postulate upon which Barner is alleged to have engaged the army bus is predicated in the majority opinion upon the assumption of fact that there existed an emergency and that under the circumstances there arose the necessity of the engagement of a jury to "assess the facts and determine whether defendant's operator had exceeded his authority."

Conceding the postulate, *arguendo,* the rule as stated by the *Restatement of Agency,* § 79, is as follows:

"Unless otherwise agreed, an agent is authorized to appoint another agent for the principal if:

\*        \*        \*        \*        \*        \*        \*        \*

(d) an unforeseen contingency arises making it impracticable to communicate with the principal and making such an appointment reasonably necessary for the protection of the interests of the principal entrusted to the agent."

Refer also to 35 *Am. Jur., "Master and Servant,"* § 164, *p.* 592; *Anno.* (1932) 76 *A. L. R.* 963. It does not follow that the rule is applicable in the instant case.

It will be observed that the implication of authority in an agent to engage another agent in an emergency rests upon the inability to obtain instructions from the principal. This qualification is expressed in the *Restatement of Agency, supra.* But in the instant case there was not only opportunity to obtain such instructions but they were actually sought and received. Assuming but not conceding that the delay in the arrival of the relief bus might have suggested an emergency to Barner, there existed the opportunity for him to again contact his principal for instructions in the premises. He had been in contact with Zingler and knew not only the location of the nearest telephone but also Zingler's whereabouts. Appellant's base of operations had been contacted and assurance given that aid would be forthcoming. Barner's duty, if he conceived the situation to be serious, was again to contact his principal, not to act upon his own initiative and without orders. This being so, the factors invoking the so-called rule of "agency by emergency" did not exist in the instant case.

It is repeated, the posture of the proofs at the conclusion of the case was such that there was sufficient that was free from dispute to establish the salient and determining facts. For the reasons hereinbefore set forth, it devolved upon the court to declare the judgment which the law imposes and a verdict should have been directed for the appellant. I would reverse the judgment.

Such a conclusion forecloses the resort to the remaining errors relied upon in the statement of questions involved and points suggested therein and argued. Therefore no expression is made in relation thereto.

I am authorized by Mr. Justice Oliphant to state that he concurs in the views expressed herein.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, WACHENFELD and ACKERSON—5.

*For reversal*—Justices OLIPHANT and BURLING—2.