202 So.2d 520 (1967)
Louella Jones JOHNSON, Individually, as Administratrix of the Estate of Betty Jean Jones Brown, Deceased, and as Guardian of Richard Jones, Jeffery Jones, Johnnie Jones, Debra Jones and James Jones, Minors,
v.
Frank P. FOSTER, Chancery Clerk of Coahoma County, Mississippi, as Administrator of the Estate of Alice Birdsong Mitchell, Deceased.
No. 44365.
Supreme Court of Mississippi.
June 12, 1967.
Suggestion of Error Overruled October 2, 1967.
*521 Howard G. Woodward, Ross & Ross, Clarksdale, for appellant.
Semmes Luckett, Brewer, Brewer & Luckett, Clarksdale, for appellee.
ROBERTSON, Justice:
Plaintiff, Louella Jones Johnson, individually, as Administratrix of the Estate of Betty Jean Jones Brown, Deceased, and as Guardian of the five minor children of deceased, brought suit in the Circuit Court of Coahoma County against Defendant, Frank P. Foster, Chancery Clerk of Coahoma County, Mississippi, as Administrator of the Estate of Alice Birdsong Mitchell, Deceased, for damages for the wrongful death of Betty Jean Jones Brown. She was killed instantly when the automobile in which she was riding as a guest passenger and which was driven by Alice Birdsong Mitchell left the right side of the paved highway and struck a culvert and embankment on the left side of the highway. The jury returned a verdict for the defendant and the court entered a judgment thereon. It is from this verdict and judgment that the appellant appeals to this Court.
About 8:00 a.m. on April 23, 1965, Mrs. Alice Birdsong Mitchell, as was her custom, left her residence located about five miles south of Clarksdale, Mississippi, on County Road D-36 in the family car to take her three children to school in Clarksdale. She delivered the children at their school and, as also was her custom, picked up her maid, *522 Betty Jean Jones Brown, and started back home driving southward on County Road D-36, also known as the New Africa Road. The asphalt pavement of this road is about thirty feet wide, and in good condition, with four foot shoulders on each side of the pavement. The weather was clear and dry and the sun was shining.
About one and one-half miles from Clarksdale on a straight and level stretch of Highway 36, the automobile driven by Mrs. Mitchell with Betty Jean Jones Brown sitting on the front seat with her, left the right side of the highway, crossed over the left side of the highway, went down a rather steep embankment into a ditch, dragged along the ditch for approximately ten yards and then struck with great force a steel culvert embedded in a roadway to a field on the east side of the highway.
The left front of the automobile was completely demolished and the left front wheel was driven back almost under the dashboard by the force of the impact. Mrs. Mitchell, the driver, and Betty Jean Jones Brown, her maid and guest passenger, were killed instantly. Mrs. Mitchell's body was still behind the steering wheel and Betty Jean Jones Brown's body was on the floor between the front seat and the dashboard when removed from the car.
Mrs. Ada Estes, at the time of the impact, was looking at the flowers along the north side of her home which was situated about 100 yards east of the New Africa Road. There was a wire fence along the Road, but she had a good view of the Road, both north and south of the point of impact. The accident happened 75 feet north of her mailbox at the corner of her property. When she heard the noise, she turned around and described what she saw in these words: "I saw the car settling in the ditch  the back end was still bumping." She did not see any traffic going north or south on the Road, nor were there any pedestrians or farm machinery in the area. Mrs. Estes ran out to the car, tried to speak to Mrs. Mitchell, but getting no response rushed back to her home and asked the telephone operator to get an ambulance and police out to the scene right away.
Travis McGahey, owner and operator of the wrecker that pulled the car out of the ditch, testified that the wrecked automobile was nosed into the ditch at about a 45° angle to the road, that the rear of the car was up on the edge of the blacktop, that the ditch was about five feet deep at the point of impact, that there were no skid marks on the paved portion of the road, and that there were no signs that the brakes had been applied. He further testified that the engine was pushed back under the dashboard, the steering mechanism "was all torn up and pushed back, and the steering wheel was broken or bent," and that the "tire on the driver's side was pushed all up under the fender."
Jesse Bonner, Deputy Sheriff of Coahoma County, testified that the car hit a 10 or 12 inch steel culvert and the embankment over it. He stated that it was about ten steps from the back of the car to where it first started dragging along the top of the ditch bank.
James L. Whittington, the Service Manager of Owen Chevrolet Company for eighteen years, testified that the 1964 Chevrolet four-door Impala was sold new to the Mitchells in late 1964 and that it had about 15,000 to 17,000 miles on it. The tires were not original equipment tires, but were new tires purchased about a month before the accident. The front end was aligned, and the steering mechanism, brakes, and exhaust system checked at the same time the new tires were put on the car. Whittington examined the car after the accident and found the steering mechanism on the left front badly damaged, the brake lines on the left front severed and all the brake fluid leaked out. The left front tire was flat, but there was no hole in it, and the other three tires were standing up and in good condition. It was impossible to tell whether anything had happened to the steering mechanism, the brakes or the left front tire prior to the *523 accident because they were so badly damaged by the impact.
Dr. Frank T. Marascalco testified that he had examined Mrs. Mitchell regularly since June of 1950 and that her health was good. On her regular annual check-up in May, 1964, he found that she had some pelvic relaxation which was a chronic condition, but did not advise surgery at that time. He found nothing on his last examination to indicate that Mrs. Mitchell was not perfectly capable of operating an automobile carefully, prudently and without negligence.
Mr. Harold Mitchell, husband of Mrs. Mitchell, testified that she was forty-two years of age at the time of her death, that her health was good and she had never fainted except on one occasion about two or three months before the accident. While watching television one night the phone rang and she got up to answer it. After hanging up the receiver she fainted and fell. He put her to bed and she felt all right the next morning and didn't think that she needed to see a doctor. He dismissed it from his mind as being nothing serious.
On the morning of April 23, 1965, she prepared breakfast for her husband and three children, they all ate breakfast together that morning, they talked and she appeared to be in good spirits and was not complaining about anything. After breakfast, as was her custom, she left in the family car to take the children to school and to pick up the maid and return home. The accident happened on the way home about 1 1/2 miles south of Clarksdale.
The appellant assigned as error:
1. The failure of the trial judge to direct a verdict for the plaintiff inasmuch as the doctrine of res ipsa loquitur was applicable, the inference of negligence was clear and the defendant offered no explanation in rebuttal.
2. The granting of instructions numbered 3 and 4 for the defendant.
3. The granting of instruction number 5 for the defendant.
4. The granting of instruction number 6 for the defendant.
5. The failure of the court itself to determine the issue of liability in view of the fact that at the conclusion of all testimony both the plaintiff and defendant moved for a directed verdict.
The question of whether the doctrine of res ipsa loquitur is applicable lies at the very threshold of this case. This question must be answered before we can proceed to answer others.
The appellant contends that such doctrine was certainly applicable, that the inference of negligence was clear and that inasmuch as the appellee offered no explanation in rebuttal, that the trial judge should have directed a verdict for the plaintiff. On the other hand, the appellee contends that the doctrine of res ipsa loquitur was not applicable and that there was insufficient proof to make a jury issue on the question of negligence, and that, therefore, the trial judge should have directed a verdict for the defendant.
The declaration alleged that Alice Birdsong Mitchell had exclusive control and management of her automobile at the time it ran off the road and struck the culvert and embankment, and that it was her duty to use due care to operate the vehicle in a careful and prudent manner so as not to negligently injure her guest passenger, Betty Jean Jones Brown. It was also alleged that in the ordinary course of events an automobile driven in a careful and prudent manner would not be driven off the highway under the circumstances then prevailing, and that, for this reason, the doctrine of res ipsa loquitur was applicable.
The proof showed that the accident occurred about 8:30 a.m. on a paved and straight highway. The weather was clear and dry, and no other vehicle, person or object was involved.
*524 In Alabama & Vicksburg Ry. Co. v. Groome, 97 Miss. 201, 52 So. 703 (1910), this Court applied the doctrine of res ipsa loquitur in a case where an employee of a railroad sued his employer. It was there said that the doctrine applies where the circumstances are such that the accident presumably would not have occurred if due care had been exercised. The Court stated that the occurrence of the accident under the circumstances raised a presumption of negligence. The Court did not distinguish between a presumption and a permissible inference. A true presumption is a rule of substantive law which compels a certain conclusion, usually a judgment, absent rebutting evidence. See 9 Wigmore, Evidence § 2491 (3d ed. 1940). On the other hand, res ipsa loquitur is a rule of circumstantial evidence from which the jury is entitled to draw an inference of the defendant's negligence. This is usually a permissible inference, however, and the jury is not bound to infer negligence even where there is no rebutting evidence. Palmer v. Clarksdale Hospital, 206 Miss. 680, 40 So.2d 582 (1949); Lo Piccolo v. Knight of Rest Products Corp., 7 A.D.2d 369, 183 N.Y.S.2d 301 (1959), aff'd, 9 N.Y.2d 662, 212 N.Y.S.2d 75, 173 N.E.2d 51 (1961).
In Palmer v. Clarksdale Hospital, supra, this Court stated that there are three conditions necessary for the application of res ipsa loquitur: (1) the accident must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not be due to any voluntary action on the part of the plaintiff.
We find no Mississippi case where an automobile left the roadway under similar circumstances to the case at bar. However, the doctrine of res ipsa loquitur has been applied in a number of cases from other states where the circumstances of the accident, caused by a motor vehicle leaving the road, remained unexplained. See Orme v. Burr, 157 Fla. 378, 25 So.2d 870 (1946); Rupe v. Smith, 181 Kan. 606, 313 P.2d 293 (1957); Vernon v. Gentry, 334 S.W.2d 266, 79 A.L.R.2d 1 (Ky. 1960); Hamburger v. Katz, 10 La. App. 215, 120 So. 391 (1928); Nyberg v. Kirby, 65 Nev. 42, 188 P.2d 1006, 193 P.2d 850 (1948); Sibley v. City Service Transit Co., 1 N.J. Super. 199, 63 A.2d 708 (1949); Manker v. Shaffer, 161 Ohio St. 285, 118 N.E.2d 641 (1954); Threadgill v. Anderson, 303 P.2d 297 (Okl. 1956); Kotal v. Goldberg, 375 Pa. 397, 100 A.2d 630 (1953). An exhaustive annotation on this subject is found in 79 A.L.R.2d beginning at Page 6.
In Vernon v. Gentry, supra, the Court, in applying the doctrine of res ipsa loquitur said:
"The facts herein conclusively show that defendant was in control of the automobile and that plaintiff's injury resulted from the accident. It is well known that an automobile does not ordinarily leave the roadway unless the person in control has been negligent in some manner. * * *"
"Here the accident was such that under ordinary circumstances it should not have happened unless the defendant had been negligent. It therefore became incumbent upon the defendant to explain how the accident did happen. * * *"
"If the doctrine of res ipsa loquitur is to be invoked, then it must follow that the presumption of negligence immediately and inevitably arises. The happening of the event itself is proof of defendant's negligence, and if not satisfactorily explained will support a verdict for the plaintiff. * * * It was the proper function of the jury to determine whether defendant satisfactorily rebutted the presumption raised by the happening of the accident." 334 S.W.2d at 268.
We are of the opinion that the jury should be permitted to determine from all the facts and circumstances whether Alice Birdsong Mitchell was guilty of negligence *525 in the operation of her automobile. This does not violate the rule against basing judgments on surmise or conjecture since the jury, applying facts of common knowledge and human experience, could determine whether it was more probable that the driver of the automobile failed to use reasonable care than that the accident was caused by something beyond her reasonable control.
Both the driver and the passenger were killed, and the evidence as to what caused the Mitchell automobile to leave the highway is not available to either party to this action. One of the reasons for the doctrine of res ipsa loquitur is that the evidence is usually within the exclusive knowledge and control of the defendant. But this is not the sole reason for the rule. In the case before us the basic reasons for the doctrine are: (1) that the automobile was being driven by Alice Birdsong Mitchell and was under her exclusive control at the time of the accident, and (2) the accident was such as would not have occurred in the ordinary course of events if the driver had used reasonable care and caution. Exclusive knowledge and control of the evidence may be a sufficient reason to apply the doctrine, but it does not necessarily follow that the doctrine will not be applied when the evidence is not available to either party.
This precise question was discussed in 79 A.L.R.2d at Page 41 wherein it was said:
"The fact that the driver of the motor vehicle died in the accident, thus making his superior knowledge unavailable, does not render the doctrine inapplicable. Thus, in Weller v. Worstall (1934) 50 Ohio App 11, 3 Ohio Ops 414, 19 Ohio L Abs 479, 197 NE 410, affd 129 Ohio St 596, 3 Ohio Ops 12, 196 NE 637, the court expressly rejected the contention that the doctrine of res ipsa loquitur could not be invoked against the estate of one who died as a result of the accident, by saying: `It is stated that the real reason for the rule lies in the fact that the cause of injury is usually known by the defendant and unknown to the plaintiff, and that when the reason for the rule fails the rule becomes inoperative. In other words the management and control of the automobile having been in the decedent, and he being dead, he can not now speak the true cause of the accident. That theory may be one of the reasons for the rule, but it is not the basic cause for its adoption. The true reason is found in the rule itself, in that the act complained of, or, the thing, speaks for itself. It is therefore not the matter of the defendant's ability to speak, but the fact that the act itself speaks. It would be just as logical to say that if a defendant does not know the cause of an accident, a plaintiff might not recover. A defendant might purposely say he did not know. If he did so he might as well be dead in so far as a plaintiff was concerned, for if a defendant could or would not speak the plaintiff must fail. The rule permits a defendant to speak the cause of the accident and perhaps thereby escape liability. He may do that by testimony other than his own. The plaintiff's right to recover can not be grounded on a defendant's inability or refusal to speak.'"
We hold that the doctrine of res ipsa loquitur was applicable, and that neither the appellant nor the appellee was entitled to a peremptory instruction. Since it was a question for the jury to decide it now becomes necessary to determine whether the appellant's other assignments of error are well taken.
The appellant contends that there was no evidence in the Record to justify the trial court in granting Instruction No. 5 for the defendant. That instruction is as follows:
"The court instructs the jury for defendant that Alice Birdsong Mitchell was *526 not guilty of negligence if the fact that the automobile she was driving left the road and ran into a culvert and embankment alongside the left side of the road was caused by a momentary loss of consciousness which was not foreseeable, or a blowout of a tire which was not foreseeable."
We agree with the appellant. There was no testimony that Mrs. Mitchell suffered a momentary loss of consciousness. In fact the testimony of her husband was to the opposite effect. He testified that on the morning of the tragic accident she prepared breakfast for him and the children as usual, that they all ate breakfast together, that they talked, that she was in good spirits and was not complaining, and seemed to be in good health.
There was no testimony of a tire blowout. The testimony was that the left front of the automobile hit a steel culvert with such force that the left front was completely demolished, that the engine was driven back under the dashboard, and that the left front wheel was driven back along with the engine. The left front tire was flat, but there was no hole in it. From a study of the pictures in evidence, it is hard to understand how the tire itself was not completely torn to pieces by the force of the impact. The other three tires which did not come in contact with the steel culvert were standing up well and in good condition.
This Court has consistently held over the years that there must be testimony in the Record on which to base instructions to the jury. McArthur v. Pruitt, 244 Miss. 649, 145 So.2d 163 (1962); Pevey v. Alexander Pool Co., 244 Miss. 25, 139 So.2d 847 (1962); Fink v. East Miss. Elec. Power Assn., 234 Miss. 221, 105 So.2d 548 (1958); Wilburn v. Gordon, 209 Miss. 27, 45 So.2d 844 (1950).
The granting of Instruction No. 5 for the defendant constituted reversible error.
The appellant complains of the granting of Instructions 3 and 4 for the appellee. These instructions are as follows:
"INSTRUCTION NO. 3 FOR DEFENDANT
The court instructs the jury for defendant that while it has granted plaintiff an instruction to the effect that you may infer that Alice Birdsong Mitchell was negligent from the fact that the automobile which she was driving left the road and ran into a culvert and embankment on the left side of the road, it also instructs you that you are not compelled or required to draw such inference from such fact; that is, that you are not compelled or required to infer that Alice Birdsong Mitchell was negligent from the fact that the automobile she was driving left the road and ran into a culvert and embankment on the left side of the road. Even though such instruction was granted plaintiff, it remains for you to decide whether the fact that the automobile which Alice Birdsong Mitchell was driving left the road and ran into a culvert and embankment on the left side of the road justifies the conclusion that Alice Birdsong Mitchell was negligent. If you do not believe from a preponderance of the evidence that the fact that the automobile left the road and ran into a culvert and embankment on the left side of the road was caused by some negligent act committed by Alice Birdsong Mitchell, then it is your duty to find for defendant."
"INSTRUCTION NO. 4 FOR DEFENDANT
The court instructs the jury for defendant that the mere happening of the accident does not raise any presumption of negligence on the part of Alice Birdsong Mitchell.
Negligence is a failure to observe, for the protection of one's self or of others, that degree of care, precaution and *527 vigilance which the circumstances justly demand. In other words, it is the want of that care and precaution which an ordinarily careful and prudent person would exercise under all the circumstances of the case.
Unless you believe from a preponderance of the evidence that Alice Birdsong Mitchell failed to do what an ordinarily careful and prudent person would have done under the circumstances of the case, or did something that an ordinarily careful and prudent person would not have done under the circumstances of the case, it is your duty to find for the defendant."
Similar instructions were soundly condemned in Fisher v. Daniels, 252 Miss. 662, 677, 173 So.2d 908, 915 (1965), wherein the Court speaking through Chief Justice Lee said:
"The principle in DeLaughter v. Womack, supra, was completely nullified in the above instruction. Under it, the falling of the machines and the injury were not proof of negligence, nor could negligence be presumed or inferred therefrom. This was error. The presumption and inference were sufficient to make a case. The appellee's defense should have been to rebut that presumption and inference.
The giving of the quoted instruction constituted reversible error."
The appellant also assigned as error the granting of Instruction No. 6 for the defendant, as follows:
"The Court instructs the jury for defendant that if you find from the evidence that the accident was unavoidable, then it is your duty to find for defendant.
An unavoidable accident is one happening suddenly and unexpectedly and without negligence on the part of anyone."
Neither the appellant nor the appellee advanced any reason why Mrs. Mitchell on a clear, dry and sunny day while driving on a straight and level paved highway suddenly turned her automobile, or the automobile itself without human touch suddenly swerved, from the right side of the highway, crossed the left side, travelled along the left shoulder of the road and then nosed into a culvert and embankment with great force. Mrs. Mitchell, the driver, and Betty Jean Jones Brown, her maid and passenger, were the only two people who could tell what actually happened, and death has sealed the lips of both. Both were killed instantly in the wreck. This is one of those peculiar cases where the underlying cause is unknown and will ever remain so.
An instruction applying the doctrine of res ipsa loquitur was granted the appellant whereby the jury was given the opportunity to infer that the accident happened because of the driver's negligence. It seems to us that the only possible instruction that the appellee could get, which would allow the jury to consider the testimony or the lack of it from the defendant's point of view, would be an unavoidable accident instruction such as was granted in this case.
Under the peculiar circumstances of this case where the cause of the accident is not known, and will never be known, we feel that the appellee was entitled to an unavoidable accident instruction, and therefore, find that the trial judge was correct in granting Instruction No. 6 for the defendant.
However, because reversible error was committed in granting Instructions 3, 4 and 5 for the defendant, the judgment of the trial court must be reversed and this cause remanded for a new trial.
Reversed and remanded.
All Justices concur, except PATTERSON and SMITH, JJ., who dissent.
*528 PATTERSON, Justice (dissenting):
I dissent from the opinion of the majority as I am convinced that a jury verdict for the plaintiff could only be the result of surmise or conjecture. The doctrine of "res ipsa loquitur" in its inception arose from the argument of an English barrister. A brief history, and the legal confusion resulting therefrom, may be found in Prosser Law of Torts section 39 (3d ed. 1964).
Though there are many uncertainties in regard to it, it might be safely stated that the doctrine is to be applied to unusual cases under the facts and surrounding circumstances of each case and because of such application a broad statement that the doctrine applies or does not apply would be inaccurate. Blashfield 9B Cyclopedia of Automobile Law and Practice § 6049 (1954).
The cases cited by the majority from various states, and in each instance readily distinguishable from the facts at bar, are only indicative of the fact that in those states the doctrine of res ipsa loquitur has been applied to automobile accidents under the peculiar facts of those cases. (Appendix 1)
There are cases to the contrary, however, in which the doctrine has been denied to the plaintiff in automobile accidents. (Appendix 2)
The cases permitting the doctrine in automobile accidents, as well as the cases denying the doctrine, both emphasize that the probabilities and inferences to be drawn therefrom must be weighed from the facts and circumstances of the individual case without the persuasion of a general statement as in the majority opinion that "the doctrine of res ipsa loquitur has been applied in a number of cases from other states where the circumstances of the accident, caused by a motor vehicle leaving the road, remained unexplained."
One constant from the cases and textwriters is that the doctrine of res ipsa loquitur, if in fact it be a doctrine, in its application is nothing more than an aspect of circumstantial evidence. Another constant is as expressed by our Court, that "it has no such magic in its operation as it thus so often sought to be worked by it in the ordinary negligence case." Columbus & G.R. Co. v. Coleman, 172 Miss. 514, 522, 160 So. 277, 279 (1935).
Stripped of its mystique, though admittedly the doctrine is intriguing to the legal profession, I am of the opinion this case should be decided by weighing the probabilities as well as the consequences arising from the evidence, or the lack of it, in the light of logic with due regard to our own decisions.
The fact that the recently-serviced automobile driven by Mrs. Mitchell veered to the left from a safe roadway on a beautiful morning and was wrecked is sufficient, according to the majority opinion, for the jury to infer negligence on the part of the driver though the inference is not compelled. With this postulate, which is the heart of the lawsuit, I cannot agree as I am of the opinion other probabilities are as self-evident as that of negligence, these being heart failure, a fainting spell, other physical impairments, or mechanical defects of the automobile. To state that one possibility or probability is more likely than the other, in my opinion, is merely to speculate. In Denman v. Spain, 242 Miss. 431, 135 So.2d 195 (1961), an automobile accident in which there were no survivors and no witnesses to the same, we stated:
The burden was on the plaintiff to prove, by a preponderance of the evidence, not only that the operator of the Plymouth was guilty of negligence but also that such negligence proximately caused or contributed to the collision and consequent damage. By the use of metaphysical learning, speculation and conjecture, one may reach several possible conclusions as to how the accident occurred. However such conclusions could only be classed as possibilities; and this Court has many times held that verdicts cannot be based on possibilities. At all *529 events, there is no sound or reasonable basis upon which a jury or this Court can say that the plaintiff met that burden. 242 Miss. at 438, 135 So.2d at 197.
In discussing circumstantial evidence and the doctrine of res ipsa loquitur, Prosser Law of Torts section 39 (3d ed. 1964) states:
The gist of it, and the key to it, is the inference, or process of reasoning by which the conclusion is reached. This must be based upon the evidence given, together with a sufficient background of human experience to justify the conclusion. It is not enough that plaintiff's counsel can suggest a possibility of negligence. The evidence must sustain the burden of proof by making it appear more likely than not. The inference must cover all of the necessary elements of negligence, and must point to a breach of the defendant's duty.
* * * * * *
Again, however, the evidence need not be conclusive, and only enough is required to permit a finding as to the greater probability.
The legal determination by which the conclusion is reached is for the court in the first instance. Prosser § 39, supra. In 2 Harper & James The Law of Torts section 19.4 (1956), relating to the test of legitimacy of an inference, the following is stated:
The test is often expressed in this way: where from the facts most favorable to the plaintiff the nonexistence of the fact to be inferred is just as probable as its existence (or more probable than its existence), the conclusion that it exists is a matter of speculation, surmise, and conjecture, and a jury will not be permitted to draw it. "Where the probabilities are at best evenly balanced between negligence and its absence, it becomes the duty of the court to direct the jury that there is no sufficient proof." It has been suggested that this "may be an overstatement of the quantum of proof required," but it represents the more usual formulation.
In applying these standards to the facts outlined by the majority opinion it is apparent that at best the probabilities are even, that one does not preponderate over the other and persuades me to the viewpoint that the trial judge should not have permitted the case to go to the jury as a verdict by it for the plaintiff could be, under the facts, only the result of surmise, speculation or conjecture.
One of the theories upon which the doctrine of res ipsa loquitur is founded is that the plaintiff did not have equal access to the facts; and since the defendant was in a position to have superior knowledge of the facts that he should have the burden in such case of meeting the inference or rebutting the presumption by proof; that is, the plaintiff's case was made immune from a directed verdict and became an issue for the jury to determine if the court in the first instance determined that the peculiar facts of the case warranted the presumption or inference. This was done in order to prevent an injustice to the plaintiff which might deprive him of his day in court when he did not have reasonable access to the facts so that he might make his case by direct proof. Though the theory, superior knowledge of the defendant, has been criticized by some of the textwriters, it has not been discarded by this Court, and it is my opinion that it should apply to the facts at hand. In DeLaughter v. Womack, 250 Miss. 190, 212-213, 164 So.2d 762, 772 (1964), we cited with approval the language used in Yazoo & M.V.R. Co. v. Skaggs, 181 Miss. 150, 179 So. 274, 277 (1938):
"That doctrine (1) has no operation to excuse or dispense with definite proof, by the plaintiff, of material facts which are tangible and are capable of direct and specific evidence, as much within the power of plaintiff to produce as of the defendant; and (2) it is available to establish negligence on the part of the defendant *530 only when the accident is such that, according to ordinary human experience, it could not have happened without such negligence, from which it follows that the doctrine does not apply when, upon the whole case, there has been specific proof which discloses some reasonable explanation for the happening other than the negligence charged against the defendant."
The application of the doctrine here is just as likely to result in injustice to the defendant, subjecting it to a substantial verdict by virtue of the imposition of a permissible inference as it is to subject the plaintiff to an injustice by depriving it of its suit, as under the facts there is no way the defendant can refute or rebut the inference.
In this situation I am of the opinion the safest and best approach to the dilemma is to abide by the admonishments of our decisions wherein they state the scope of the doctrine is limited and should be cautiously applied. Clark v. Vardaman Mfg. Co., 249 Miss. 42, 162 So.2d 857 (1964); Sanders v. Smith, 200 Miss. 551, 27 So.2d 889 (1946); J.C. Penney Co. v. Evans, 172 Miss. 900, 160 So. 779 (1935); and Columbus & C.R. Co. v. Coleman, 172 Miss. 514, 160 So. 277 (1935). In so doing, through conjecturally an injustice could be done to one or the other, we do not depart from the established rule of law that the plaintiff in order to prevail must do so by a preponderance of the evidence. The thought occurs that though injustice may result to the plaintiff as mentioned, such conclusion is not paramount, as justice is as probable since there are accidents from which injuries result which are not only inexplicable, but which are also unavoidable and from which there could be no liability.
For these reasons I am of the opinion the case should be affirmed, through I am of the further opinion the trial court should have directed a verdict for the defendant at the conclusion of the plaintiff's testimony.

APPENDIX
1. Unlike the case at bar, each of the cases cited by the majority has a distinguishing feature or strong indication of negligence. These elements are indicated below in parentheses and are the opinion of this writer.
(a) Orme v. Burr, 157 Fla. 378, 25 So.2d 870 (1946) (Excessive Speed), concerns a guest-passenger suit arising from an automobile accident wherein all the occupants of the automobile were killed, the court stating:
It is quite possible that the driver of the car in this case was not conscious that the high speed at which he was traveling would place his guests or himself in danger. * * *
(b) Rupe v. Smith, 181 Kan. 606, 313 P.2d 293 (1957) (On Demurrer), concerns a case in which the court held that from the following allegation in the declaration "that when the automobile driven by the defendant reached a point on said highway about 1.4 miles east of said town of Hazelton on a level stretch of road, it was driven off the road by defendant into a concrete embankment, the severe impact of which caused the almost immediate death of the deceased", an inference of negligence could be presumed and the declaration was good as against demurrer.
(c) Vernon v. Gentry, 334 S.W.2d 266, 79 A.L.R.2d 1 (Ky. 1960) (Excessive Speed), which is relied upon so heavily by the majority, causes one to ponder if the doctrine of res ipsa loquitur was applicable at all, as the testimony of the defendant as found by that court was that approximately three o'clock in the morning defendant and driver of the vehicle left a party in which she admitted having two or three drinks, and who testified that "an automobile coming in the opposite direction suddenly appeared around the curve on her side of the road, and that in order to avoid a collision she *531 turned the steering wheel hard to the right, which caused the automobile to go off the shoulder of the road and strike a tree." There being direct evidence of the accident, the doctrine is not applicable at all. See DeLaughter v. Womack, 240 Miss. 190, 164 So.2d 762 (1964), wherein we stated:
The doctrine does not apply where there is direct evidence as to the precise cause.
(d) Hamburger v. Katz, 10 La. App. 215 120 So. 391 (1928) (Excessive Speed), cited by the majority, is distinguishable, the court there holding:
But out of the cross-fire of contradictory assertions we have no difficulty in finding that, as to the defendant Katz, his operation of the automobile he was driving was exceedingly careless and in reckless disregard of the safety of the other occupants of his car, as well as himself. Practically every witness in the case, except Katz, testifies to his excessive speed. The judge below, in his reasons for judgment, found that he was traveling 40 or 45 miles per hour. It appears to us that he was going faster than this, but at any rate his pace, considering the condition of the road, the surface of which was loose gravel, was inexcusable. Moreover, at the point where the accident happened, the road was constructed from the crown of an embankment whose sloping sides terminated in a canal on each side of the road, an additional reason for careful driving. 120 So. at 393.
(e) Nyberg v. Kirby, 65 Nev. 42, 188 P.2d 1006 (1948) (Excessive Speed on Bad Roads), is patently distinguishable as the court there stated:
It may be surmised, and even inferred, from the circumstances, that Mrs. Kirby was negligent, for the reason that she was traveling fifty miles an hour, even though she knew there were "chuck holes" in the road. Traveling at such speed obviously curtailed her opportunity to see such "chuck holes" in sufficient time before contacting them to enable her to lessen the speed of the car and to approach them cautiously and easily, instead of violently. With such opportunity lessened because of the speed, and bearing in mind that Mrs. Nyberg testified she felt a "bump," just before her head struck the side of the car, it becomes probable, from these circumstances, that the car hit one of the "chuck holes" without Mrs. Kirby having discerned it before such contact, that the contact was, therefore, violent, and that the effect of the same was to cause the front wheels of the automobile truck to swerve suddenly and with sufficient force to cause Mrs. Kirby to lose control thereof. The existence of these circumstances of fact establishes a reasonable basis for the factual inference of negligence. 188 P.2d at 1020.
(f) Sibley v. City Service Transit Company, 1 N.J. Super. 199, 63 A.2d 708 (1949) (Bus Accident), concerns an action by bus passengers to recover for injuries sustained while riding in an Army bus which had picked them up after defendant's bus, in which they were originally passengers, had broken down. The Army bus left the roadway, mounted a curb and crashed into a wall. Defendant bus company was held liable. In affirming Sibley, 2 N.J. 458, 66 A.2d 864 (N.J. 1949), the court noted that the bus accident occurred at 2:30 a.m. on a "very, very cold" and "blustery" night and that the roadway was "very glassy." The doctrine of res ipsa loquitur was applied in this case, the court stating:
A common carrier of passengers is charged with the duty of using a high degree of care for their safety. * * * Negligence was reasonably inferable from the circumstances. The bus went off the highway and dashed into a wall; and from this circumstance alone, nothing else appearing, the want of the requisite *532 degree of care is fairly deducible. There was evidence that just before the bus left the highway, the operator, Herman, exclaimed: "Here, we go." This suggests forewarning. It was for the jury to say whether it signified the operation of the bus in the face of a known and obvious danger, and whether the operator exercised a high degree of care for the passengers' safety. 66 A.2d at 867.
(g) Manker v. Shaffer, 161 Ohio St. 285, 118 N.E.2d 641 (1954) (Excessive Speed), concerns an action by a paying passenger of a station wagon for injuries sustained when the station wagon suddenly left the road and struck a tree. The facts show that the station wagon was being driven at a rate of speed higher than was reasonable under the existing circumstances, that there was a light drizzle of rain and "it was kind of dark. Headlights on. * * *"
(h) Threadgill v. Anderson, 303 P.2d 297 (Okl. 1966) (Oklahoma Instruction Explained), concerns an action in behalf of a guest passenger in an automobile owned and driven by defendant's intestate. The facts are so dissimilar and the points of law so utterly unrelated to those at bar that it simply should not be authority for the majority opinion.
(i) Kotal v. Goldberg, 375 Pa. 397, 100 A.2d 630 (1953) (Excessive Speed), involved an action by the administrator of the estate of the deceased guest-passenger against the administratrix of the estate of the deceased motorist. The facts show that the automobile failed to make a curve and left the highway, knocked over several reflectory posts, turned over several times, finally returned to the highway and came to a stop with the wheels of the automobile in the air. There was testimony by a witness that the automobile in question passed him at an estimated 60 miles per hour as they were approaching a curve. The court said:
The jury could well find from the evidence that the cause of the crash was the excessive speed of the Studebaker car under the particular circumstances of the highway.
2. In the following cases the doctrine was held not to apply, the causes of the accidents resting in the realm of conjecture and speculation, according to the courts.
(a) In Larkin v. State Farm Mutual Automobile Insurance Company, 233 La. 544, 97 So.2d 389 (1957), the court held the doctrine of res ipsa loquitur was not applicable, the known facts being that the car in which plaintiff's intestate was riding was found completely submerged in water paralleling a highway, with both the driver and the plaintiff's intestate dead inside; there were no witnesses; that the "tire tracks at the scene showed that Swilley's car, traveling toward New Orleans, had run off the concrete onto the west (its right hand) shoulder, had traveled southward along the shoulder for a distance of 118 feet, both wheels being off the highway; had got back on the concrete and at a 45° angle had proceeded to the opposite side and onto the other shoulder  from which it had apparently flipped over into the canal, its front end pointing back toward the highway." The court noted that "No causal connection between the accident and some phase of negligent operation of the car has been shown, and it is our opinion that when all the facts are considered, this case is not one in which the doctrine of res ipsa loquitur is applicable." 97 So.2d at 393.
(b) In Fuller v. Fuller, 253 N.C. 288, 116 S.E.2d 776 (1960), plaintiffs were riding in a pickup truck operated by decedent. There was no other traffic. The weather was clear and the road dry. At the point of the accident, the highway was straight. The truck veered gradually to the left, ran off the hard surface and onto the shoulder with a bumping sound, continued on the shoulder at a slight angle to the highway for about 75 feet, proceeded into a field and continued *533 in a straight line about 150 feet until it struck a peach tree. No one saw the truck before it reached the shoulder of the road. Plaintiffs were asleep. In affirming a judgment for defendant, the court said: "The cause of the accident rests in the realm of speculation and conjecture. Negligence will not be presumed from the mere happening of an accident. In the absence of evidence on the question, freedom from negligence will be presumed." 116 S.E.2d at 777.
(c) See also Chasse v. Albert, 147 Conn. 680, 166 A.2d 148 (1960); Ivey v. Rollins, 250 N.C. 89, 108 S.E.2d 63 (1959); Lane v. Dorney, 250 N.C. 15, 108 S.E.2d 55 (1959); Cole v. Swagler, 308 N.Y. 325, 125 N.E.2d 592 (1955); Galbraith v. Busch, 267 N.Y. 230, 196 N.E. 36 (1935), all refusing to apply the doctrine, as an inference of negligence would be guesswork.
SMITH, J., joins in this dissent.

ON SUGGESTION OF ERROR
RODGERS, Justice:
We have considered en banc the fine brief on the suggestion of error filed by the defendant-appellee, and we have reached the conclusion that it should be overruled. We believe, however, that we should point out that  although we hold that the defendant's instruction which in effect voided the doctrine of res ipsa loquitur and the instruction based on selected facts leaving out other circumstances were not proper and should not be given on retrial  nevertheless, the defendant is entitled to an instruction advising the jury that it is not required or compelled to infer that Alice Birdsong Mitchell was negligent.
Suggestion of error overruled.
All Justices concur, except PATTERSON and SMITH, JJ., who adhere to their former dissenting opinion.