LEE, Justice,
for the Court:
Shirley Barnes, Administratrix of the Estate of Dexter Walton, Deceased intestate, brought suit in the Circuit Court of Washington County for damages resulting from Walton’s death, the trial court sustained motions for a directed verdict in favor of Robert Taylor, Administrator of the Estate of Daisy Savage, Deceased intestate, and William J. Ellard and National General Insurance Company, his surety, and Barnes appeals here. We affirm.
The only question presented is whether or not the trial court erred in sustaining the motions for a directed verdict.
Appellant’s declaration charged (1) that Daisy Savage was negligent in failing to keep her automobile under reasonably free and easy control failing to maintain a proper lookout for the Steel Bayou bridge, operating her automobile at a dangerous and excessive speed, and failing to decrease speed upon approaching and going around a curve and traveling upon the Steel Bayou Bridge; and (2) that William J. Ellard, Road Commissioner of Washington County, was negligent in failing to maintain the bridge in a safe condition, failing to display signs, lights, or warnings to show the defective and dangerous condition of the bridge, failing to place guardrails on either side of *973 the bridge, failing to display signs, lights, or warnings to indicate a dangerous turn upon approaching the bridge, and in failing to warn plaintiff’s decedent that the creek was at high water.
Daisy Savage had driven to Jackson Lake in Washington County on a fishing trip with friends. She left them at the lake and, accompanied by her eleven-year-old grandson, Dexter Walton, started to Rolling Fork to procure an inspection sticker for her ear. The shortest route from that point to Rolling Fork was by way of the Steel Bayou road and bridge. Mrs. Savage left the lake between 8:30 and 9:30 a. m., May 21, 1973, and she and the child were not seen again until their bodies and the car were found in Steel Bayou on May 25,1973. The Steel Bayou bridge was one hundred eighty (180) feet long and twenty-one (21) feet wide. At the west approach, the road made a sharp turn onto the bridge, and it likewise made a sharp turn on leaving the east end. Wooden guardrails (4" X 8") were built along the sides of the bridge, but farm machinery with discs [standard width twenty-four (24) feet] constantly knocked the guardrails down in passing over the bridge. On May 22, Constable Lott noticed a creosote plank missing from a side of the bridge, it having disappeared since the previous Saturday night. Three days later, Mrs. Savage’s body was seen floating seventy-five (75) feet downstream near the east bank of the bayou, Dexter Walton’s body was found between one-fourth (1/4) to one-half (1/2) mile downstream, and the automobile was found approximately sixty (60) feet downstream. There were no eyewitnesses to explain what occurred.
Appellant contends that the doctrine of res ipsa loquitur applies and that the physical facts as stated, together with reasonable inferences, constitute a question of liability for the jury to determine.
Denman v. Denman, 242 Miss. 59, 134 So.2d 457 (1961), was a suit by the administrator of the estate of a deceased (passenger in an automobile) charging that the defendant was driving at an unlawful rate of speed and contending that the doctrine of res ipsa loquitur applied. The trial court directed a verdict for the defendant and, in affirming the judgment, this Court said:
“In the second count of the declaration, plaintiff attempted to avail herself of the doctrine of res ipsa loquitur. We do not believe such doctrine is applicable to this case. Mrs. Eva B. Denman had no control over the Ross vehicle. The rule seems to be that res ipsa loquitur ‘will not be applied where the evidence discloses that the injury might have occurred by reason of the concurrent negligence of two or more persons or causes, one of which was not under the management and control of the defendant * * * ’ Vol. 9B, Blashfield, Cyclopedia of Automobile Law and Practice, Sec. 6046, p. 454.” 242 Miss. at 69-70, 134 So.2d at 461.
In Larkin v. United States Fidelity & Guaranty Company, 258 So.2d 132 (La.App.1972), the Louisiana Court, in discussing the doctrine of res ipsa loquitur, stated:
“The doctrine is, however, inapplicable where the injury might have been brought about by one, two, or more causes, neither of which is included nor excluded by any affirmative showing. Nor does the doctrine find application where, from the nature of the facts, it is reasonable to assume that the damage may have been caused by the negligence of another or through the instrumentality or the agency of another, or when the accident might have happened as the result of two or more causes with some of which defendant had no causal connection.” 258 So.2d at 135.
The latest Mississippi ease dealing with the doctrine is Johnson v. Foster, 202 So.2d 520 (Miss.1967). In the Johnson case, Mrs. Mitchell had picked up her maid in the family car, and was driving southward on a county road. It was constructed of asphalt pavement, was about thirty (30) feet wide, and was in good condition with four-foot shoulders on each side of the pavement. The weather was clear, and the sun was shining. The vehicle left the right side of *974 the highway, crossed over the left side of -same, went down a steep embankment into a ditch, dragged along the ditch for about ten (10) yards and struck a steel culvert embedded in the roadway, killing Mrs. Mitchell and the maid instantly. A Mrs. Estes was in her yard about three hundred (300) feet from the accident, with a good view for a long distance either way of the scene. When she heard the noise, she looked around and saw the car settling in the ditch. There were no other vehicles or objects involved.
Evidence in the Johnson case negated negligence on the part of any other person, it indicated that the vehicle was in good mechanical condition, that Mrs. Mitchell was in good physical condition, and that there was no causal connection between the accident and any other thing. The Court held that the doctrine of res ipsa loquitur [the thing speaks for itself] applied, and that whether Mrs. Mitchell negligently lost control of the car was a question for the jury-
In the present case, there was no proof of (1) Mrs. Savage’s physical condition, (2) mechanical condition of the Savage vehicle or damage to it after it was drawn from the bayou, (3) the cause of the death either of Mrs. Savage or Dexter Walton (no evidence of an autopsy), (4) whether other people or objects were involved, or (5) who was driving the automobile.
In reviewing the record, there is no evidence to submit to the jury the question of how, when, or where these people lost their lives, and, as staged in the dissenting opinion in Johnson v. Foster, supra, a jury verdict for the plaintiff could only result from surmise, speculation or conjecture. The trial court was correct in sustaining the motion and entering judgment for Robert Taylor, Administrator of the Estate of Daisy Savage, Deceased.
While the evidence showed without dispute that the Steel Bayou bridge was hazardous and dangerous to drive upon, it is difficult to see how the failure to maintain wooden guardrails along the bridge, as charged and proved, would prevent an automobile- from driving off the bridge into the bayou. It is not necessary to discuss negligence, if any, on the part of Ellard for failure to maintain signs, lights and warnings at the approaches to the bridge or to discuss his duties and authority so to do, since the lack of proof as to how, when, and where Savage and Walton died applies to the case against Ellard as well as against Taylor. The trial court was also correct in sustaining the motion for directed verdict by Ellard and his surety, and entering judgment for them.
For the reasons stated, the judgments of the trial court are affirmed.
AFFIRMED.
GILLESPIE, C. J., PATTERSON and IN-ZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER and BROOM, JJ., concur.