DENMAN, A MINOR, ETC. *v.* SPAIN, EXECUTRIX

No. 42070 December 4, 1961 135 So. 2d 195

*Breland & Whitten,* Sumner; *Ross & Ross,* Clarksdale, for appellant.

*Vincent J. Brocato, Brewer, Brewer & Luckett,* Clarks-dale, for appellee.

APPELLANT IN REPLY.

LEE, P. J.

Betty Denman, a minor, by her mother and next friend, Joyce H. Denman, sued Mrs. Phina Ross Spain, executrix of the estate of Joseph A. Ross, deceased, to recover damages for personal injuries sustained by her, allegedly resulting from the negligence of the decedent in the operation of an automobile. The issue was submitted to a jury on the evidence of the plaintiff—no evidence being offered for the defendant—and there was a verdict and judgment for the plaintiff in the sum of $5,000. However, on motion of the defendant, a judgment *non obstante veredicto,* that is, notwithstanding the verdict, was sustained and entered. From that action, the plaintiff has appealed.

A like suit had been filed by the same plaintiff in the Circuit Court of the Second Judicial District of Tallahatchie County against Mack L. Denman, administrator of the estate of Mrs. Eva B. Denman, deceased; but, at the close of her evidence, the court sustained a directed verdict for the defendant. On appeal the judgment in that case, being No. 42,003, was affirmed by this Court on November 6, 1961, not yet officially reported.

The appellant contends that the evidence offered by her, together with the reasonable inferences therefrom, was sufficient to make an issue for the jury as to whether the alleged negligence of the deceased driver, Ross, proximately caused or contributed to the collision and the consequent damage; and that it was error to set aside the verdict of the jury and enter the judgment for the defendant, notwithstanding that verdict. Hence, she says that such judgment should be reversed, and that the verdict and judgment of the jury should be reinstated.

A careful scrutiny and analysis of the evidence is therefore necessary:

Sunday, March 23, 1958, was a rainy, foggy day. About six o'clock that afternoon, at dusk, Mrs. Eva B. Denman, accompanied by her granddaughter, Betty, the plaintiff, was driving her Ford car southward on U. S. Highway 49E. At that time, Joseph A. Ross, accompanied by Miss Euna Tanner and Mrs. J. L. Haining, was driving his Plymouth car northward on said highway. Just south of the Town of Sumner, the cars collided. Mrs. Denman, Miss Tanner and Ross were killed. Betty, nearly seven years of age at the time, and Mrs. Haining were injured. Neither had any recollection of what had happened at the time of the collision. Betty, lying in water on her back in a ditch on the east side of the road, cried out and was rescued by some unknown person.

Plaintiff's father, Stuart Denman, who went to the scene shortly after the collision, described the situation

substantially as follows: The Ford car was about seven yards off the paved surface on the east side in a bar pit "heading back towards the railroad track, which is in an easterly direction." The engine and transmission were on the opposite side of the road, out of the car and about fifty yards apart. The plymouth was also on the east side, facing west, about fifteen yards north of the Ford.

No proof was offered as to skid marks, or other evidence to show the point of contact between these two vehicles. Eleven photographs of the damaged Plymouth, taken from various positions, and thirteen pictures of the damaged Ford, also taken from various positions, other than being mute evidence of a terrible tragedy, depict no reasonable or plausible explanation as to why this collision occurred, or who was responsible for it. three other photographs, portraying the topography of this immediate area, afford no excuse whatever for such grievous human error.

Over objection by the defendant, John Barnett testified that he was driving a Dodge pickup north of highway 49E on his way to Tutwiler; that he was traveling at a speed of fifty or fifty-five miles per hour; that the Plymouth, which was in the wreck, passed him about three-fourths of a mile south of where the collision occurred, going at a speed of about seventy miles per hour; that when it passed, it got back in its lane, and neither wavered nor wobbled thereafter; that he followed and observed it for a distance of forty or fifty yards, and that it stayed in its proper lane as long as he saw it. Although another car was on the road ahead of him, he could have seen as far as the place of the accident except for the rain and fog.

Over objection by the defendant, Hal Buckley, a Negro man, testified that he was also traveling north on 49E on his way to Tutwiler at a speed of forty to fifty miles per hour. About two hundred yards south of the

place where the collision occurred, a light green Plymouth, which he later saw at the scene of the accident, passed him at a speed of seventy-five or eighty miles an hour. He could see its tail lights after it passed, and "he was just steady going; he wasn't doing no slowing up." He saw it until it ran into the other car. On cross-examination, he said that, after this car passed him, it got back on its side of the road, drove straight, and he did not notice that it ever went back over the center. Also on cross-examination, in an effort at impeachment, a part of the transcript in the other trial, containing this question and answer, was read to him as follows: "What do you estimate the speed of that car was when it passed you—the one that was going the same direction that you were?", and the answer was: "Well, I don't have no idea." When he was asked why he made this difference in his testimony, he hesitated and replied, "I didn't give no sorta idea how fast he was going?" He then admitted that, when the car passed him, it got back on its side and drove straight ahead, and that he could see the accident, but he could not tell anything about it or on which side of the road it happened. He also did not notice the other car, which came from the other direction.

▆▆▆ Since Barnett did not see the car any more after it had gone forty or fifty yards beyond him, and his knowledge of speed was based on what he saw about three-fourths of a mile south of the place where the collision occurred, this evidence was inadmissible under the cases of Bennett v. Hardwell, 214 Miss. 390, 59 So. 2d 82 and Barrett v. Shirley, 231 Miss. 364, 95 So. 2d 471. ▆▆▆ On the contrary, since Buckley testified the speed of this car, when it passed him, was seventy-five to eighty miles an hour and that it did not slow down in the remaining distance of two hundred yards before the collision, such evidence was competent and admissible under the Bennett and Barrett cases, supra. The at-

tempted impeachment went to its credibility and not its admissibility.

From this evidence, the plaintiff reasons that the jury could, and did, find that the Ross car was being operated, under inclement weather conditions, at an unlawful and negligent rate of speed, and that, if Ross had had his car under adequate and proper control, in all probability the collision could have been avoided. She voices the opinion that the physical facts, including the pictures of the wrecked vehicles, indicated that the Ford car was probably across the highway at an angle of perhaps forty-five degrees at the time of the collision.

But the testimony of Buckley showed only that the Plymouth was being operated at an excessive and negligent rate of speed. It otherwise showed that the car was in its proper lane. He did not notice it go over the center at any time, but it was driven straight down the road. No eye-witness claimed to have seen what happened. There was no evidence to indicate the place in the road where the vehicles came in contact with each other. There was no showing as to the speed of the Ford, whether fast or slow; or as to whether it was traveling on the right or wrong side of the road; or as to whether it slid or was suddenly driven to the wrong side of the road into the path of the Plymouth. The cars were so badly damaged that the pictures afford no reasonable explanation as to what person or persons were legally responsible for their condition. In other words, just how and why this grievous tragedy occurred is completely shrouded in mystery.

 █ The burden was on the plaintiff to prove, by preponderance of the evidence, not only that the operator of the Plymouth was guilty of negligence but also that such negligence proximately caused or contributed to the collision and consequent damage. By the use of metaphysical learning, speculation and conjecture, one may reach several possible conclusions as to how

the accident occurred. However such conclusions could only be classed as possibilities; █ and this Court has many times held that verdicts cannot be based on possibilities. █ At all events, there is no sound or reasonable basis upon which a jury or this Court can say that the plaintiff met that burden.

The judgment must be affirmed.

Affirmed.

*Kyle, Arrington, Ethridge* and *Gillespie, JJ.,* concur.