217 So.2d 643 (1969)
Bessle S. CALLENDER
v.
Sandra COCKRELL, a Minor by Willie B. Cockrell, Father and Next Friend.
No. 45128.
Supreme Court of Mississippi.
January 13, 1969.
Jerry Yeager, Raleigh, Watkins & Eager, Elizabeth Hulen, Jackson, for appellant.
L.D. Pittman, Crymes G. Pittman, Raleigh, George B. Grubbs, Mendenhall, for appellee.
SMITH, Justice:
Mrs. Bessie S. Callender has appealed from a judgment for $5,000 recovered against her by appellee, Sandra Cockrell, *644 a 15 year old minor, in the Circuit Court of Smith County.
Suing by her father as next friend, appellee began the action in the Smith County Circuit Court against her 18 year old cousin, Diane Cockrell, Diane's father, Homer Cockrell, and Mrs. Bessie S. Callender, the appellant here, for the recovery of damages for alleged personal injuries sustained in an automobile collision which had occurred on North Street in the City of Jackson.
The declaration laid venue in Smith County, alleging that Diane Cockrell and her father, Homer Cockrell, were residents of that county. Separate sworn applications for change of venue to Hinds County were filed by Diane Cockrell and Mrs. Bessie S. Callender upon the ground that each of them was a resident and householder of Hinds County and that Homer Cockrell had been joined fraudulently for the purpose of conferring venue jurisdiction upon the Smith County Circuit Court.
There was no question that Mrs. Callender resided in Hinds County and upon the hearing of Diane Cockrell's application, according to her own testimony, she was "living in Jackson" and employed by a life insurance company there. She had her own apartment in Jackson but "went home," meaning her father's home in Smith County, on weekends. Apparently no serious contention was made that a cause of action existed against Homer Cockrell and this was confirmed by the proof subsequently adduced at the trial. However, the court denied the application when Diane Cockrell stated, in response to a question put to her by the court, that although she lived and worked in Jackson, what she really thought of as "home" was Smith County.
After a jury had been empaneled, plaintiff's counsel announced that settlement had been made with the Cockrell defendants and that a nonsuit was being taken as to them. Whereupon, Mrs. Callender, as the only remaining defendant, renewed her application for a change of venue to the county of her household and residence. The court again denied the application, this time upon the ground that a jury had been empaneled before the announcement of the nonsuit as to the Cockrell defendants. The action of the trial court in denying a change of venue under these circumstances is assigned as error and might present a serious question but for the fact that we have concluded that the case must be reversed upon other grounds.
The declaration charged that plaintiff-appellee, Sandra Cockrell, had been riding as a passenger in an automobile driven by her cousin, Diane Cockrell, when it had run into the rear end of Mrs. Callender's automobile, as a result of which plaintiff had been injured. It was alleged that the collision and consequent injuries were proximately caused by the negligence of Diane Cockrell in driving at a high, excessive and unlawful rate of speed, not maintaining a "reasonable and proper lookout," and not having her automobile under "reasonable and proper control." Mrs. Callender was charged with having failed to give a signal of her intention to turn right from the street "which constituted negligence" and with not keeping a proper lookout to the rear and bringing her vehicle to a sudden stop without warning.
After nonsuits had been entered as to the Cockrells, the case proceeded to trial against Mrs. Callender. Two witnesses testified for plaintiff-appellee upon the issue of liability, the plaintiff-appellee herself and her cousin, Diane Cockrell. Medical evidence tended to indicate that, fortunately, appellee's injuries were not grave and were temporary in character.
The collision, out of which the suit arose, occurred a little before noon on July 13, 1966, on a clear day on North Street in the City of Jackson. An automobile, being driven by Mrs. Callender, was proceeding south on North Street, on *645 which the speed limit is 30 miles per hour, when she was overtaken and her car was run into from the rear by the automobile being driven by Diane Cockrell in which appellee, Sandra Cockrell, was a passenger. At the time, the two girls were on their way to lunch.
Appellee, testifying in her own behalf, said that she first saw the Callender vehicle when it was about a half block ahead, and that the automobile in which she was riding overtook it and approached it to within approximately 15 to 20 feet. She testified that Diane Cockrell maintained this interval between the two vehicles as they proceeded down the street. She said that Diane was driving at a speed of 30 to 35 miles per hour, (on cross-examination she said they were making 35), when she observed the stop lights on the Callender automobile go on. At that time the interval between the Callender car and the Cockrell car had been reduced to 12 to 15 feet. Diane Cockrell testified that she applied her brakes when she saw the stop signal, but was unable to stop and skidded into the back of the Callender car. Appellee said that at the moment of impact, they were still going 20 to 25 miles per hour. In her testimony, appellee specifically confirmed those allegations of her original declaration charging that Diane Cockrell did not have her automobile under control, was not keeping a proper lookout and was driving at an excessive rate of speed.
The testimony of Diane Cockrell was, in great part, of a negative character and consisted of many "I don't know" answers.
She testified that the Callender car was not moving when she hit it, (appellee said it was slowing down), that she had observed its stop lights go on but she could not state how fast either car was going or how far she was behind the Callender automobile and said that when she saw the stop light come on she put on her brakes but could not stop.
Diane Cockrell thought she had been following about two car lengths behind Mrs. Callender but she was "not sure of that." She admitted that she was driving 30 to 35 miles per hour, but said "I don't know how fast she (Mrs. Callender) was going." The proof was that Mrs. Callender had been traveling 15 to 20 miles per hour.
Diane Cockrell admitted that she was gaining on Mrs. Callender and when asked if she was going faster than Mrs. Callender she said "evidently so." She said "I saw her brake lights go on," but was unable to say how far back of Mrs. Callender she had been at the time or how fast either she or Mrs. Callender was going, or how far back she had been when she applied her brakes or what skid marks she had left.
The Cockrell car had come over a rise in the street at some 30 to 35 miles per hour and had overtaken Mrs. Callender, who was "not going very fast." For the few seconds it took to travel about half a block the Cockrells followed her, closing the distance between the two automobiles, according to appellee, to an interval of some 12 to 15 feet. Both girls saw the stop lights on the Callender car come on as she began slowing, preparatory to making a right turn off the street. Diane Cockrell testified that it was then that she had applied her brakes but could not stop and had skidded into the rear of the Callender automobile. At the moment of impact, according to appellee herself, the Cockrell car was still making 20 to 25 miles an hour.
North Street, on which the collision occurred, is a reasonably wide street, divided into two lanes by a painted center line. Nowhere in the record is there a suggestion that Mrs. Callender crossed the center line or left her lane of traffic. Moreover, it is to be noted that this is not a case of an overtaking vehicle attempting to pass or in the process of passing a preceding vehicle.
*646 Essentially negative testimony was offered to support the charge that the right turn signal was not given by Mrs. Callender, and, upon analysis, it constitutes little more than a statement by the Cockrells that they did not observe it. Appellee testified that, as far as she knew, it could have been given and she said that Diane Cockrell had not been keeping a proper lookout ahead. It will be assumed, however, that the jury was warranted in finding from the evidence that Mrs. Callender failed to give the statutory right hand turn signal and that this failure constituted negligence per se. Nevertheless, the evidence is incapable of supporting a finding that such negligence was a contributing cause of the collision or of any injury the plaintiff may have sustained. In order to recover, it is necessary that there be evidence not only of negligence, but also there must be some evidence capable of supporting a finding that such negligence was a proximate contributing cause of the injury.
Mississippi Code 1942 Annotated section 8193 (1956) provides that the statutory signal of an intention to decrease speed or stop, required by the section which precedes it, may be given either "by means of the hand and arm or by a signal lamp or signal device of a type approved by the department."
In Wilburn v. Gordon, 209 Miss. 27, 45 So.2d 844 (1950), the appellant challenged the correctness of the following instruction given at the instance of the appellee.
* * * The Court instructs the jury for the defendant that a person driving upon the highway is required by law, before stopping or suddenly decreasing the speed of his automobile, to give a proper signal of such intention, and if you believe from the evidence in this case that the plaintiff so stopped or decreased his speed without giving such proper signal, then you must find that the plaintiff was negligent.
In holding that the granting of such an instruction was error this Court said:
* * * This instruction should not have been granted, because it was not supported by any evidence. It is to be remembered that the automobile had a signal lamp on its back end. Under Section 8193, Code 1942, it is provided that the "signals * * * shall be given * * * by a signal lamp." There is no controversy in the record as to the car being so equipped. It was also in good order.
In Yazoo & Mississippi Valley R.R. v. Aultman, 179 Miss. 109, 173 So. 280 (1937), this Court had under consideration a statute (Mississippi Code 1930 Annotated section 6130), which provided, in part, as follows:
Any railroad company having the right of way may run locomotives and cars by steam through cities, towns and villages, at the rate of six miles an hour and no more; and the company shall be liable for any damages or injury which may be sustained by any one from such locomotive or cars whilst they are running at a greater speed than six miles per hour through any city, town or village.
In that case, plaintiff had obtained an instruction, based upon this statute, which informed the jury that:
[T]he company shall be liable for any damages or injury which may be sustained by anyone from such locomotive or cars whilst they are running at a greater speed than six miles per hour * * *.
This Court reversed a judgment recovered by the plaintiff, who had been injured when the automobile in which he was a passenger had run into a train at a crossing, which was alleged to have been exceeding the speed limit fixed in the statute. It was held that, notwithstanding the language of the statute, and although *647 its violation constituted negligence, nevertheless it was essential to recovery that it also be established that such speed was a proximate contributing cause of the injury.
Shaw v. Phillips, 193 So.2d 717 (Miss. 1967) was a suit for personal injuries by Shaw against Phillips as a result of an automobile collision. The court directed a verdict for Phillips, and Shaw appealed. It was contended by appellee Phillips in the cited case that the judgment should be affirmed because it was established that Shaw had been operating his vehicle while intoxicated in violation of law. This Court rejected that contention and reversed saying, "It is negligence to operate a vehicle while intoxicated. However, this negligence, as any negligence, must be causally related to the accident." 193 So.2d at 718.
In case at bar both Diane Cockrell and Sandra Cockrell admitted that the brake lights on the Callender car came on as Mrs. Callender slowed her automobile. It is impossible to reach any reasonable conclusion from the evidence other than that a lawful and appropriate warning signal was being given by Mrs. Callender as she decreased speed. There is not a scintilla of evidence capable of supporting a finding that Mrs. Callender's negligence in failing to give a signal of her ultimate intention to turn right was a proximate contributing cause of the collision. It was the slowing or the slowing and stopping of the Callender automobile, of which both Cockrells admittedly had lawful notice, that provided the occasion for it to be run into from the rear by their automobile, which was, according to appellee's own testimony, following too closely, being driven at a high, excessive and unlawful rate of speed, at a time when its driver was not maintaining a proper lookout ahead and did not have the automobile under control. Under these circumstances, the collision was inevitable, and neither a right hand turn signal nor any other action reasonably available to Mrs. Callender would have averted it.
Ordinarily, a plaintiff is bound by his own testimony as to facts of which he professes direct knowledge, and may not recover upon the basis of evidence of another witness or other witnesses who give directly opposing evidence. Bradshaw v. Stieffel, 230 Miss. 361, 92 So.2d 565 (1957). Here, appellee's own testimony conclusively establishes that the collision resulted solely from the negligence of the driver of the automobile in which she was riding and that negligence on the part of Mrs. Callender, if there was any, was not a proximate contributing cause. It is to be borne in mind that as the Cockrell automobile followed Mrs. Callender at a speed of 30 to 35 miles per hour with an interval between the two automobiles of only 15 to 20 feet, it was moving some 44 to 51 feet per second. Also, when the impact occurred, (again according to appellee's own testimony), it was still traveling 20 to 25 miles per hour or 29 to 36 feet per second.
The brake or stop light not only is a statutorily approved method of indicating to the driver of a following vehicle an intention to stop or "suddenly" to decrease speed, but it is a fact of common knowledge, which this Court may judicially notice, that it is a means in constant and everyday use for that purpose, particularly in city traffic.
In a table, not necessarily authoritative but of interest in a case of this kind prepared by the American Automobile Association the "stopping distance" of an automobile going 30 miles per hour is given as slightly more than 100 feet. At 35 miles per hour it is shown as 130 feet. In a note following the table as published in 4 Averbach, Handling Accident Cases 120 (1961) is this statement of facts which should be self evident:
The stopping distance represents a danger zone which always stretches out ahead of every moving car. As the reaction time of the driver increases, the danger zone lengthens. As the speed of *648 the car increases, this zone of danger stretches out very much farther. Road conditions and brake conditions can make it still longer. The driver has this zone to deal with. He cannot escape it. In his driving, he must always plan for it. A car cannot really be in control unless the driver is taking this danger zone into consideration.
Following too closely behind the Callender automobile, not keeping a lookout ahead, not having her vehicle under control, and traveling at an excessively high rate of speed the driver of the Cockrells' car had closed to within 12 to 15 feet and was moving at a speed of from 44 to 51 feet per second when both girls noticed that the stop light on the Callender vehicle had gone on. Under these undisputed circumstances it was a manifest impossibility to avoid running into the rear of the Callender car. The futility of attempting to do so is reflected by Diane Cockrell's testimony that, when she saw the stop signal come on, she applied her brakes and pulled left but skidded nevertheless into the left rear of the Callender automobile. As Sandra Cockrell described it, they tried to "dodge" Mrs. Callender but "we didn't dodge her enough." Neither the giving of a right hand turn signal by Mrs. Callender nor a realization on her part that the Cockrells had come up behind her could have averted the collision.
Construing the evidence most favorably to the appellee and adopting the view that Mrs. Callender was guilty of negligence in failing to signal her intention to turn right and in failing to be aware that the Cockrell automobile had overtaken her, the evidence is incapable of supporting a finding that this negligence was a proximate contributing cause of the collision.
Reversed and judgment here rendered for the appellant.
ETHRIDGE, C.J., and RODGERS, BRADY and PATTERSON, JJ., concur.