498 So.2d 823 (1986)
Roosevelt SMITH, Individually as Representative and Administrator of the Estate of Rosie Lee Smith, a/k/a Rosie Lee Shorter, a/k/a Rosie Lee Jones
v.
ESTATE OF Louis S. GILBERT, III, Deceased, and Frank Foster, Administrator.
No. 56,005.
Supreme Court of Mississippi.
November 19, 1986.
Tyree Irving, Walls, Buck & Irving, Greenville, for appellant.
Andrew N. Alexander, III, Lake, Tindall, Hunger & Thackston, Greenville, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
HAWKINS, Presiding Justice, for the Court:
The estate of Rosie Lee Smith, a/k/a Rosie Lee Shorter, a/k/a Rosie Lee Jones, appeals from a directed verdict and judgment entered thereon in the circuit court of Coahoma County against the estate of Louis S. Gilbert, III, arising out of the head-on motor vehicle accident in that county. Finding sufficient evidence was adduced to survive such motion, we reverse and remand for trial.

*824 FACTS
The Friar's Point Road in Coahoma County runs generally in a north-south direction. Its asphalt surface is approximately eighteen feet wide. Just after midnight on October 4, 1981, Rosie Lee Smith, with the above aliases, was riding as a guest passenger in a 1977 Dodge van being driven south on this road by Pearlie Mae Townsend. Sitting between these two ladies on a milk crate was James Jackson. All were Tunica county citizens.
Gilbert was driving a 1976 GMC pickup truck north on this road. In the rear of the pickup was Honda three-wheeler.
The van and the pickup collided on the Friar's Point Road close by the Coahoma County Junior College.
Gilbert and Ms. Townsend were killed instantly, while Rosie lived in a comatose state until January 10, 1983, when she too departed this life intestate. Roosevelt Smith, a legal representative and administrator of Rosie's estate, filed suit in the Coahoma County circuit court against the estate of Gilbert for Rosie's wrongful death. Frank P. Foster, chancery clerk of Coahoma County, was the appointed administrator of Gilbert's estate.
Except for Jackson there were no eyewitnesses to the accident, and Jackson was amnesic insofar as recalling how the accident occurred.
At trial only two witnesses testified as to the scene of the accident. Billy S. Helton, the first to arrive, testified to seeing glass, gas and oil all over the highway. Glass was scattered all about. A "windshield" was north of the pickup, and the three-wheeler was north of the pickup on the edge of the highway, according to him.
Helton drew a diagram in which he positioned the pickup straddled across the center of the road, headed in a slightly southwest direction, and the van off on the west shoulder, headed slightly northeast. The glass was marked as scattered on both sides of the road. Helton positioned the "windshield" in the center of the east lane just north of the pickup, and the three-wheeler off on a shoulder on the east side.
Andrew Thompson, Jr., Coahoma County deputy sheriff, was the investigating officer, attending to the victims and supervising clearing of the wreckage. He was there that night, and returned the next day to take pictures of the road. He said there was a dim and faded median line.
Thompson described the pickup as across the road, its front pointed west, and the front part of the cab, approximately four feet, extending over onto the west lane. The rear glass of the pickup was in the grass on the east shoulder, the three-wheeler was three to four feet north of the pickup in the east lane. The van was on the west shoulder with its front end about twelve inches from the pavement. Antifreeze, transmission oil and glass were in the road, with the largest concentration in the west lane.
Thompson also observed what he took to be a fresh gouge mark in the west lane just south of the pickup. Thompson visited the scene the following April preparatory to giving a deposition and was unable to find the gouge mark, although the pavement had not been resurfaced.
Thompson made a drawing on a large cardboard sheet of the scene as he found it that night. The drawing shows the pickup at right angles across the center of the road, headed west, with its front end across the centerline into the west lane a few feet. Also, around the south side of the front end of the pickup, and west of the front end of the pickup the drawing shows a concentration of anti-freeze, transmission fluid, oil, glass, molding, grill and debris. This concentration is shown just over into the west lane of the road. Or, put another way, this concentration is on the east side of the west lane of the road. The gouge mark on the drawing extends from the front left end of the pickup south, and is in the west lane of the road.
The Honda three-wheeler is shown a few feet north of the right rear end of the pickup, and is in the east lane of the road. The rear window of the pickup is shown off *825 on the east shoulder, slightly southeast of the pickup.
The van is shown completely off on the west shoulder headed just slightly north of due east.
At the conclusion of the plaintiff's case, the defendant moved for a directed verdict, which the court sustained on the ground that from the evidence there could be nothing more than mere speculation as to how the accident occurred. Rosie's estate has appealed.

LAW
We deal here with the propriety of a directed verdict, and must apply the familiar rule of accepting all favorable evidence supporting plaintiff's case as true, together with all reasonable inferences therefrom, and then determining whether such an analysis would support a jury verdict in favor of the plaintiff.
We must also recognize that negligence may be proved by circumstantial evidence, and we have held that when a case turns on circumstantial evidence it should rarely be taken from the jury. Cameron v. Hootsell, 229 Miss. 80, 90 So.2d 195 (1956); Parker v. Ford Motor Co., 331 So.2d 923 (Miss. 1976); Bratschi v. Ray, 393 So.2d 1356 (Miss. 1981).
In sustaining the defendant's motion, the circuit judge relied on two cases from this Court: Denman, Minor v. Denman, Administrator, 242 Miss. 59, 134 So.2d 457 (1961); and Denman v. Spain, 242 Miss. 431, 135 So.2d 195 (1961).
Upon appeal the plaintiff argues that Pope v. McGee, 403 So.2d 1269 (Miss. 1981), is more nearly applicable to this case.
In the Denman cases involving accidents with no living eyewitnesses, this Court upheld directed verdicts for the defendants. In Pope, also a no surviving eyewitness case, we reversed a circuit court judgment based upon a directed verdict in favor of the defendant.
We have carefully examined this Court's opinions in the Denman cases, as we have assidously studied the record in this case. We find one distinction: In the Denman cases the physical evidence could have just as easily supported the collision between the vehicles on either side of the highway.
As in Pope, in this case we have come to the conclusion that although the issue is extremely close, sufficient evidence was presented to make a jury issue that Gilbert's GMC pickup was encroaching onto the west, or southbound lane at the point of the accident. While speculation pure and simple will not support a verdict, there can be a consistent pattern of facts from which a reasonable inference can be made, Bratschi v. Ray, supra. We refrain from more precise comment on the evidence in this case.
Nor do we attempt to predict what evidence will be offered upon retrial.
Finding the circuit judge erred in directing a verdict for the defendant in this case, we reverse and remand for trial.
REVERSED AND REMANDED.
WALKER, C.J., ROY NOBLE LEE, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.